In re BOARD OF RAPID-TRANSIT COM'RS.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

MUNICIPAL CORPORATIONS—CONSTRUCTION OF RAPID-TRANSIT RAILROAD—RE-
DUCTION OF BOND.

Where, on an application by the board of rapid-transit commissioners, joined with the corporation counsel, for a reduction of a bond required by them for the construction of the Rapid-Transit road of New York City, the municipal authorities and such commissioners represent that a bond of $5,000,000 will amply protect the city, the commissioners will be relieved from their stipulation requiring a bond for a larger amount, to the extent that a bond for $5,000,000 will be a compliance with the requirement.

Van Brunt, P. J., dissenting.

Application by the board of rapid-transit commissioners, city of New York, for reduction of a certain bond required by them for the construction of the Rapid-Transit road in New York City. Granted.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, and INGRAHAM, JJ.

Edward M. Shepard and Albert B. Boardman. for the board of rapid-transit commissioners.

John Whalen, Corp. Counsel, for the application.

George Zabriskie, opposed.

PER CURIAM. The corporation counsel, on behalf of the city of New York, having joined with the rapid-transit commissioners in this application, and the municipal authorities as well as the rapid-transit commissioners having represented that in their opinion a bond of $5,000,000 will, in view of the form of the contract and the conditions under which the Rapid-Transit road is now to be constructed, amply protect the city, the rapid-transit commissioners are relieved from the stipulation which they gave as a condition upon the confirmation of the report of the commissioners in approving of the construction of this proposed railway, to the extent that a bond of $5,000,000 will be a compliance with the stipulation.

VAN BRUNT, P. J. I cannot concur with the majority of the court in the disposition of this application. While in view of the evidence produced of the difficulty of procuring a bond in the sum of $14,000,000 to secure the performance of the proposed rapid-transit contract, so far as it related to construction and equipment,

a reduction in the amount of such bond might be justified, yet it does not seem to me that, in justice to the property owners, such a reduction should be made as virtually to deprive them of the security which upon the original application was by this court deemed absolutely necessary for their protection, and upon which the consent of the court was founded. So far as the consent of the city authorities to the road is concerned, that in no way protects those whose interests the appellate division, in passing upon this application, is bound to protect. The argument advanced, that the security demanded is in excess of that which has ever been required in similar contracts, is of no possible weight, because there has never yet been a contract entered into presenting any of the peculiar features which are so prominent in the proposed rapid-transit contract. While a 10 per cent. bond might possibly be a reasonable security for construction, it is after construction is completed that the main burdens of the contractor begin. He is then for the first time required to invest in the enterprise his own money, to the extent of over 30 per cent. of the entire cost of construction, and in order to secure this advance a bond of less than one-half the amount is required. It is conceded upon the moving papers that the security required by the city of Boston upon its subway contracts was 20 per cent., which would amount in the case at bar to a bond of from eight to ten millions of dollars. The security required by the United States government is 25 per cent., amounting in the case at bar to a bond from ten to twelve millions of dollars; and no case can be cited, where a work of the remarkable character required by the contract in question is to be prosecuted, that it has been allowed to proceed upon the giving by the contractor of such grossly inadequate security as has now been determined upon. It is to be observed that this peculiarity of the contract was the reason for fixing the bond at the amount mentioned upon the original application, and these conditions have not changed. After construction, the expenses of which are to be paid by the city, the contractor, out of his own money, is bound to equip and run the road, towards which latter expenditure the city is required to contribute nothing; and this agreed contribution must necessarily amount to eight or ten millions of dollars,—a feature which is entirely different from any contract which the city has ever entered into before, or probably will be called upon to fulfill again. If the contractor fails in the performance of the contract, as was originally stated, it must be because the expenses of construction and equipment are greater than he anticipated, and the city must necessarily furnish the many additional millions required to complete and make the work useful.